8 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Otoniel HERNANDEZ-GUZMAN, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70151.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 3, 1993.*
Decided Sept. 17, 1993.
 
 Before: TANG, CANBY, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner contests a final order of deportation issued by the Board of Immigration Appeals (BIA) on January 16, 1992. The decision affirmed the July 25, 1991, order of the immigration judge (IJ) finding petitioner deportable and denying his application for suspension of deportation. Petitioner argues that a Judicial Recommendation Against Deportation (JRAD) precludes his voluntary manslaughter conviction from rendering him statutorily ineligible for suspension of deportation.
 
 
 3
 Respondent contends that petitioner failed to exhaust his claim and, alternatively, that the JRAD does not bar a finding that petitioner is statutorily ineligible for deportation.
 
 DISCUSSION
 
 4
 On petition for review, we determine whether there is reasonable, substantial, and probative evidence in the record as a whole to support the BIA decision that the INS carried its burden of proving deportability. Hernandez-Robledo v. INS, 777 F.2d 536, 539 (9th Cir.1985).
 
 
 5
 * Before considering the merits of petitioner's claim, however, we must determine whether he exhausted his administrative remedies before seeking review of the deportation order. As a general rule, "issues not raised before an administrative tribunal cannot be raised on appeal from that tribunal." Bagnes-Valles v. INS, 779 F.2d 483, 484 (9th Cir.1985).
 
 
 6
 Petitioner's contention that the JRAD precluded his conviction for voluntary manslaughter from rendering him statutorily ineligible for suspension of deportation was raised before the IJ. The BIA also considered this claim, albeit in a footnote. Petitioner, therefore, exhausted his administrative remedies.
 
 II
 
 7
 We find, nevertheless, that petitioner's contention that the JRAD precluded his conviction for voluntary manslaughter from rendering him statutorily ineligible for suspension of deportation is unpersuasive.
 
 
 8
 The Attorney General has discretion to suspend deportation of an alien if the alien can establish that (1) he or she has been physically present in this Country for a continuous period of seven years immediately preceding the date of an application for suspension of deportation; (2) he or she was a person of "good moral character" during that period; and (3) his or her deportation would result in "extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. 8 U.S.C. § 1254(a)(1). Nonetheless, compliance with the statutory requirements for suspension of deportation does not automatically entitle an alien to such relief--it is a matter of discretion. Delgado-Chavez v. INS, 765 F.2d 868, 869 (9th Cir.1985).
 
 
 9
 Therefore, to establish eligibility for suspension of deportation, an alien must demonstrate that he or she has been a person of "good moral character" for the requisite period of time. Though the phrase "good moral character" is not defined in the Act, persons engaging in certain conduct are statutorily precluded from establishing "good moral character." One such category is persons who, during the applicable period of time, were confined as a result of a conviction in a penal institution for an aggregate period of 180 days or more. 8 U.S.C. § 1101(f)(7).
 
 
 10
 Focusing on petitioner's claim, there is no dispute that he was confined in a penal institution in excess of 180 days as a result of his conviction for voluntary manslaughter. Petitioner urges, however, that § 1101(f)(7) is inapplicable to his case because he was the beneficiary of a JRAD. Petitioner relies on the language of § 1251(b)(2), which provides relief from deportation in certain cases in which a JRAD is executed. Section 1251(b)(2), however, mandates the nonapplicability of § 1251(a)(4) only. The version of § 1251(a)(4) relevant to this matter states:
 
 
 11
 Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who--
 
 
 12
 (4) is convicted of a crime involving mortal turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.
 
 
 13
 The express terms of § 1251(b)(2), therefore, preclude only the deportation of an alien who is deportable on the basis of a conviction for a crime for which he or she received a JRAD--petitioner's case is not such a case.
 
 
 14
 Petitioner was found deportable under § 1251(a)(2) for entering the United States without inspection, not § 1251(a)(4) for committing a crime of moral turpitude. Section 1251(b)(2) on its face applies "only to deportation proceedings based upon convictions of crimes of moral turpitude. Section 1251(b)(2) does not apply to deportation proceedings brought pursuant to provisions of the ... Act other than § 1251(a)(4)." Delgado-Chavez, 765 F.2d at 860. Since petitioner was not charged with deportability under § 1251(a)(4), for committing a crime of moral turpitude, the JRAD did not preclude deportability pursuant to § 1251(a)(2). Section 1251(b)(2) gives a JRAD no other effect than providing for the nonapplicability of § 1251(a)(4), deportability for the conviction of a crime of moral turpitude.
 
 
 15
 Moreover, the express language of § 1101(f)(7) mandates that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was" confined as a result of a conviction to a penal institution for an aggregate period of 180 days or more. Section 1101(f)(7) simply does not provide for any effect of a JRAD. Accordingly, we have no choice but to find that the record supports the BIA's decision that petitioner is statutorily ineligible for suspension of deportation because of his incarceration in a penal institution in excess of 180 days during the applicable period.
 
 
 16
 Petitioner's Petition for Review is DENIED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3